1                   UNITED STATES OF AMERICA
                EASTERN DISTRICT OF MISSOURI
2                     EASTERN DIVISION

3  UNITED STATES OF AMERICA,     )
                        )
4         Plaintiff,      )
                        )
5      vs.              )  No. 4:13-CR-462 SNLJ
                        )
6  BULMARO VILLEGAS-RODRIGUEZ,   )
                        )
7         Defendant.      )

8

             TRANSCRIPT OF SENTENCING HEARING
9

      BEFORE THE HONORABLE STEPHEN N. LIMBAUGH, JR.
10           UNITED STATES DISTRICT JUDGE

11              December 3, 2014

12

APPEARANCES:
13

For Plaintiff:      Mr. James C. Delworth
14                   OFFICE OF U.S. ATTORNEY
                   111 S. 10th Street
15                   20th Floor
                   St. Louis, MO  63102
16

For Defendant:      Mr. Sean M. Vicente
17                   FEDERAL PUBLIC DEFENDER
                   1010 Market Street
18                   Suite 200
                   St. Louis, MO  63101
19

20  INTERPRETER:        Mr. Humberto Orive

21  REPORTED BY:        SUSAN R. MORAN, RMR, FCRR
                   Official Court Reporter
22                   111 South 10th Street
                   St. Louis, MO  63102
23                   (314) 244-7983

24

Proceedings recorded by mechanical stenography, produced by
25  computer-aided transcription.

1          (The following proceedings were held in open court

2     on December 3, 2014 at 1:31 p.m.:)

3               THE COURT:  Good afternoon.

4               MR. DELWORTH:  Good afternoon, Your Honor.

5               MR. VICENTE:  Good afternoon, Your Honor.

6               THE COURT:  This case is United States of America

7     versus Bulmaro Villegas-Rodriguez.  The case number is

8     13-CR-462.  The government is present by Assistant U.S.

9     Attorney James Delworth.  The defendant is present in person

10    by Counsel Sean Vicente.

11              The preliminary matter that I need to address is

12    that the Court's been advised that the defendant speaks

13    Spanish only, and for that reason the Court has arranged for

14    an interpreter to assist with the proceedings via telephone

15    conference call.  And the defendant has been supplied with an

16    earpiece and microphone so he can communicate with the

17    interpreter.

18              So I'll ask, first of all, that the interpreter be

19    sworn in by the court clerk.

20              (Interpreter sworn.)

21              THE COURT:  Good afternoon.  Thank you for your

22    assistance.

23              Mr. Villegas-Rodriguez, is your earpiece working

24    properly?

25              THE INTERPRETER:  Yes, sir.

1          THE COURT:  And you can hear the interpreter just

2   fine then; is that right?

3          THE INTERPRETER:  Yes, sir.

4          THE COURT:  And if at any time the equipment does

5   not work properly, raise your hand and I'll fix the problem.

6   Will you do that?

7          THE INTERPRETER:  Will do so.

8          THE COURT:  Okay.  And my recollection too, and also

9   from reading the presentence report is that you do speak a

10  little bit of English; is that right?

11         THE INTERPRETER:  Very little.

12         THE COURT:  I'm sorry?

13         THE INTERPRETER:  Very little.

14         THE COURT:  Very little.  Okay.  That's fine.

15  That's fine.  Well, this matter is set today for sentencing,

16  you having pled guilty before me several weeks ago.  I've

17  received the presentence report from the probation office, so

18  did you with the assistance of an interpreter and your lawyer

19  read the presentence investigation report?

20         THE INTERPRETER:  I read it first a few weeks ago.

21         THE COURT:  Okay.  All right.  And then also with

22  the assistance of an interpreter has your lawyer explained to

23  you the contents of the presentence report?

24         THE INTERPRETER:  A little bit, yes.

25         THE COURT:  Did you go over the report with your

1    client?

2           MR. VICENTE:  I did, Your Honor, with Mr. Ernest

3    Birch, who is in court today, on several occasions.  We went

4    over both the draft report that came out I believe in

5    September and --

6           THE COURT:  The final.

7           MR. VICENTE:  -- on more than one occasion.

8    And then the final report we also went over with

9    Mr. Villegas-Rodriguez.  Mr. Birch was there.  The

10   conversation was both in English and Spanish.  Mr. Birch was

11   there to interpret anything and everything.

12          THE COURT:  And you covered everything that was in

13   the report then?

14          MR. VICENTE:  Yes, Your Honor.

15          THE COURT:  In detail?

16          MR. VICENTE:  Yes, Your Honor.

17          THE COURT:  Do you agree with that,

18   Mr. Villegas-Rodriguez?

19          THE INTERPRETER:  I have not -- I have not read the

20   latest PSI.  It is the first one that I read.

21          THE COURT:  Yes, but there's no substantive changes

22   to my recollection.

23          MR. VICENTE:  That is correct, Your Honor.  I don't

24   want to get in a dispute here regarding what we went over,

25   but we have gone over the final.  And also the highlighted

1    changes, I told Mr. Villegas-Rodriguez about because, one,

2    they are to his benefit.  One had to do with the criminal

3    history.  The second one was regarding the drug minus two law

4    that passed November 1st or Guideline change, which was

5    actually in the first draft noted as a possible impact of

6    future legislation, so that lower Guideline range was

7    actually in the very first draft in the first place.  So, in

8    other words, every substantive issue we went over.

9              THE COURT:  So any additions, corrections, or

10   objections by the defendant?

11             MR. VICENTE:  No, Your Honor.

12             THE COURT:  For the government?

13             MR. DELWORTH:  No, Your Honor.

14             THE COURT:  The Court then will adopt as its

15   findings of fact the factual statements set out in the

16   presentence report.  And I'll review with you specifically

17   the Sentencing Guidelines calculations.  The total offense

18   level is 34, criminal history category is VI.  The statute

19   provides on Count I up to ten years in prison -- I'm sorry,

20   not less than ten years.  And then on Count II, up to life in

21   prison.  And then the Guidelines provide 262 months to 327

22   months, and a supervised release period of five years.  Any

23   objections?

24             MR. DELWORTH:  No, Your Honor, not on behalf of the

25   government.

1          THE COURT:  Okay.  The Court then will adopt as its

2     additional findings, the Sentencing Guidelines calculation as

3     stated.

4          Now, I have read the sentencing memoranda filed by

5     both the defendant and the government, and I'll take all of

6     that into consideration.  So what then is the government's

7     recommendation?

8          MR. DELWORTH:  Your Honor, the government would

9     recommend a sentence within the Guideline range.  We believe

10    that the calculations appropriately take into consideration

11    the conduct of Mr. Villegas-Rodriguez with respect to the

12    narcotics trafficking and also the additional action

13    regarding the conspiracy to kidnap.  And we believe that the

14    Guidelines are appropriate as well as the criminal history

15    score.

16         THE COURT:  Let me ask you about the methamphetamine

17    mixture penalty structure.  Is there any grounds for a

18    downward variance?

19         MR. DELWORTH:  I know that the defense has filed it,

20    and it would be the government's position that, no, there

21    would not be.  I think it accurately --

22         THE INTERPRETER:  I'm sorry, Your Honor, this is the

23    interpreter.  I cannot hear counsel.

24         THE COURT:  Okay.  Please repeat what you just said.

25         MR. DELWORTH:  I'm sorry.  I know that the defense

1    has filed a motion for downward variance.  The government

2    opposes that and believes that the Guidelines are

3    appropriately calculated based upon the actual quantity of

4    methamphetamine.  And especially in this case where the

5    percentage of purity was so high, that tied in with

6    Mr. Villegas-Rodriguez's trips down to Texas would indicate a

7    very close if not direct contact with the source of supply

8    for the methamphetamine.  And we believe that the Guideline

9    range is appropriate in this case.

10          THE COURT:  All right.  Mr. Vicente.

11          MR. VICENTE:  Thank you, Your Honor.  I'll start I

12    guess talking about the mixture.  It's true that the 500 plus

13    grams, that was actual.  So we do concede that.  We concede

14    it in the statement of facts in the guilty plea and did not

15    object to it in the PSR.

16          The issue that I raised at length in the sentencing

17    memorandum was basically why, why is the actual meth -- first

18    of all, the sentencing structure with respect to crack

19    cocaine, powder cocaine, heroin, marijuana doesn't break down

20    the purity levels.  And the reason I added Table A, it's

21    right after certificate of service, because I think it does

22    explain so well how much more harshly methamphetamine is

23    treated with no real empirical evidence.

24          So, for example, if we take cocaine base which is

25    treated the second most severely for that amount,

1    Mr. Villegas considering the same amount of narcotics would

2    be facing 168 to 210.  Heroin, 120 to 150 months.  We're

3    talking -- and it would be one thing if Congress was able to

4    lay out and explain as to why actual meth was so much worse.

5    And I understand that it's closer to the tie and that

6    Mr. Villegas was down in Texas, which is just miles away or

7    hundreds of miles, I'm not sure, Texas is a big state, but

8    how far away from the actual source.  But if that were powder

9    cocaine or crack cocaine, we would be at the same numbers.

10   We would be at those low numbers.

11            THE COURT:  So --

12            MR. VICENTE:  Yes, Your Honor.

13            THE COURT:  -- this boils down to a policy argument

14   then?

15            MR. VICENTE:  Yeah, it's a policy argument that I

16   laid out.  It's mostly a policy argument.  I mean, I

17   understand that first and foremost Mr. Villegas-Rodriguez is

18   going to be punished.  He accepts that.  I understand that.

19   This is a case that calls for it.  This isn't a case where

20   you come in here and say, oh, someone was buying pills and

21   they are an addict and feel sorry for them, and look at their

22   terrible life.  That's not this.  He was proactive.  We get

23   that.

24            This was attempted kidnapping.  If he was here just

25   for the attempted kidnapping, his Guidelines would be much,

much lower.  The meth really, the actual meth is what really drives this.  And I think it's basically is how much is too much?  The Court needs to take into consideration sufficient punishment that's greater but not greater than necessary.  This is a gentleman that obviously is illegal.  It's a gentleman that won't be given any time off when he's in the Bureau of Prisons.  He won't go to a halfway house, for example.  He's not going to avail a lot of the programs.  He's going to do harder time rather than most.  Not only that, we're paying him for to be housed before he eventually gets shipped back to Mexico.  Now, granted he has come back before, but needless to say if he comes back now, it will be many, many years.

He's 32 years old.  We're not asking for a ten-year sentence, but even if the Court were to give him a ten-year sentence, I think he turns 33 in February, so he'd be getting out in his early forties.  With a 15-year sentence, which is what we're asking for here, even if you do 12 and a half, because that's what he'll do if it's a 15-year sentence, you're talking almost 45 years old.  A substantial, substantial amount of time.

He absolutely needs to be punished.  This is a scary situation, a scary case in a lot of ways.  Thankfully it did not go forward.

And the other argument I have, and the Court knows

1    it well too because it was once again laid out in the

2    sentencing memorandum, is the criminal history.  Between the

3    ages of 21 to 22 years old, he picked up four DUIs.  Seven of

4    his 13 criminal history points come from those DUIs.  And I

5    understand those cases are dangerous.  Thankfully in those

6    cases nobody got hit, he didn't crash any cars.  But at the

7    same time he got three points for one of those DUIs.  He

8    could have gotten those same three points by touching a child

9    or doing some sort of heinous act, where he got those same

10   three points.  So that's why I'm just asking for some

11   perspective there.

12           We didn't object to criminal history because the

13   probation office in paragraph 138, they as well recognized

14   it.  So we weren't going to object because I think they too

15   noted this is a bit inflated.

16           So for those reasons, and I guess the one final

17   thing I'll throw in too is Mr. Villegas when I first met him

18   was extremely strung out.  I was given a warning initially

19   that he may be a bit paranoid.  I think that was from the

20   daily meth use.  He admitted to probation he was using meth

21   daily.  He admitted to drinking a 12 pack of beer a day.

22   This is a gentleman that was just sort of amped up on all the

23   fringes and making extremely terrible decisions that he's

24   going to pay for with an extremely long sentence.

25           But since that was worked out of his system, he's

1    become much more rational and he understood the case.  And it

2    took a little while to get through to him because --

3                THE INTERPRETER:  I apologize, Your Honor, I'm

4    having trouble hearing counsel.

5                MR. VICENTE:  Sure.  My apologies.  Just because of

6    some of the interpretation issues and explaining wiretaps and

7    whatnot, but once we got through those everything sort of

8    lined up for him.

9                So for all those reasons, the reasons first I guess

10   and foremost regarding the methamphetamine and the harsh

11   punishment, criminal history, for those reasons we ask for a

12   sentence of 180 months, Your Honor.

13               THE COURT:  Mr. Villegas-Rodriguez, do you wish to

14   make a statement?

15               THE INTERPRETER:  Just, Your Honor, that I

16   acknowledge why I'm here, and I'm asking you to give me a

17   fair sentence.

18               THE COURT:  Is there any legal cause or reason why

19   sentence should not now be imposed?

20               MR. VICENTE:  No, Your Honor.

21               MR. DELWORTH:  No, Your Honor.

22               THE COURT:  Let me address the last issue first.  I

23   disagree with defense counsel that the criminal history is

24   overstated.  The points add up.  And I reviewed this very

25   closely.  And even the DWI points, the felony DWI points are

1    properly counted.

2            And I also note that the defendant has had the

3    advantage of the deterrent effect of being incarcerated and

4    having drug treatment, and yet there's been repeated serious

5    criminal activity for many years now, not to mention the

6    repeated illegal entries into the United States after

7    deportation.

8            And I also disagree with defense counsel on the

9    methamphetamine argument.  We are dealing with actual

10   methamphetamine.  The Guidelines are appropriate in the

11   Court's determination, especially under the circumstances of

12   this case.  I understand completely the policy argument that

13   defense counsel is making, but I just don't think that it

14   would be --

15           MR. VICENTE:  Your Honor, I believe he's having

16   trouble hearing.  Just one moment.

17           (There was a conference held off the record.)

18           MR. VICENTE:  Your Honor, he's claiming that --

19   actually my client is claiming about a minute ago he can't

20   hear out of the headphones anymore.

21           THE COURT:  Okay.  We'll fix that problem.

22   Mr. Orive?

23           MR. VICENTE:  That's probably why.

24           THE COURT:  We'll go off the record.

25           (There was a brief recess.)

1          THE CLERK:  We can hear you now, thank you.

2          THE COURT:  All right.  We'll go back on the record.

3     Is the system working properly now, Mr. Villegas-Rodriguez?

4     Can you hear properly?

5          THE INTERPRETER:  Yes.

6          THE COURT:  Okay.  At what point I wonder did we

7     lose the connection?  I'll ask Mr. Orive.  Do you have some

8     idea about that?

9          THE INTERPRETER:  Your Honor, you mentioned that you

10    were going to deal with the last issue first and then the

11    signal started fading out and then I completely lost you.

12         THE COURT:  That's fine.  Well, I'll readdress that

13    issue.  The last issue first is the contention that the

14    criminal history is overstated.  And I disagree.  And the

15    reason I disagree is because even the criminal history points

16    are properly counted and even the DWI, which is a felony DWI,

17    it's not just a series of one-point misdemeanor DWIs, he was

18    convicted of a felony DWI.  And then the other felony

19    offenses.  And that on top of at least two incidents when the

20    defendant reentered the United States after deportation.  So

21    considering all that, I do not think that the criminal

22    history is overstated.

23         And then as to the methamphetamine argument, again,

24    counsel concedes that it's a policy argument.  I think in

25    this case in view of all the circumstances of the case that

1  the Sentencing Guidelines for this actual methamphetamine

2  amount are appropriate.  And I might add too that the

3  sentence that I'm about to impose would be a sentence that I

4  would impose even if I thought that the Sentencing Guidelines

5  should reflect the kind of level that the defense counsel

6  argues for.

7       And all in all, the circumstances of the offense are

8  rather harrowing.  The fact that the actual kidnapping and

9  the planned murder didn't take place is just fortuitous, very

10  fortunate.  And a ransom of $120,000 and tens of thousands of

11  dollars worth of drugs, illegal drugs at issue, the Court is

12  simply unwilling to vary downward from the Sentencing

13  Guidelines.

14       So pursuant to the Sentencing Reform Act of 1984 and

15  the provisions of Title 18, United States Code, Section

16  3553(a), and all the factors thereunder, also in view of the

17  sentencing objectives of just punishment, general deterrence,

18  and incapacitation, and for the other reasons stated, it is

19  the judgment and sentence of the Court that you, Bulmaro

20  Villegas-Rodriguez, is hereby committed to the custody of the

21  Bureau of Prisons to be imprisoned for a term of 262 months.

22  This term consists of a term of 262 months on each of Counts

23  I and II to be served concurrently.  But they shall be served

24  consecutively and not concurrently to any other sentences

25  from any other court or jurisdiction.

1    While in the custody of the Bureau of Prisons, I

2    recommend the defendant be evaluated for participation in a

3    residential drug abuse program.  When you are released from

4    imprisonment, I order that you shall be placed on supervised

5    release for a term of five years if you are not otherwise

6    deported.  And that will be a term of five years on each of

7    Counts I and II to be served concurrently.

8    And within 72 hours of your release from the custody

9    of the Bureau of Prisons, you have to report in person to the

10   probation office in the district to which you are released.

11   Again, that is if you are not automatically deported.  And

12   the only condition of supervision then that I will list is

13   that you shall participate in all deportation proceedings and

14   remain outside of the United States if deported.

15   I don't think it's necessary to list any other

16   conditions of supervised release because it's certain that

17   the defendant will be deported on his release.

18   Do you have any objection to that for the government

19   then?

20   MR. DELWORTH:  No, Your Honor.

21   THE COURT:  All right.  The Court also finds the

22   defendant does not have the ability to pay a fine.  But it's

23   further ordered that the defendant shall pay to the United

24   States a special assessment of $100 on each of Counts I and

25   II for a total of $200, and that's due immediately.

1     Mr. Villegas-Rodriguez, I have to advise you now

2 that you have a right to appeal from this sentence.  You have

3 to bring your appeal within 14 days.  Failure to appeal

4 within the 14-day period will be a waiver of your right to

5 appeal.  You're also entitled to assistance of counsel in

6 taking an appeal.  If you can't afford a lawyer, one will be

7 appointed to represent you.

8     And, finally, if you so request, the Clerk of the

9 Court will file a Notice of Appeal on your behalf.  You

10 understand you have that right to appeal?

11     THE INTERPRETER:  Yes.

12     THE COURT:  That said, as part of the Plea Agreement

13 you gave up most grounds, if there were any, to bring an

14 appeal.

15     THE INTERPRETER:  But I do wish to appeal.

16     THE COURT:  All right.  Well, your lawyer is

17 notified of that in that case, and he will assist then.

18     Is there anything further for the record?

19     MR. DELWORTH:  Yes, Your Honor, pursuant to the Plea

20 Agreement and Mr. Villegas-Rodriguez's knowing and voluntary

21 pleas to Count I and II of the indictment, the government

22 would move to dismiss the other counts in the indictment

23 alleged against him, which would be Counts III, IV, V, VII,

24 and VIII.

25     THE COURT:  All right.  Those counts are dismissed.

1    Anything further for defendant then?

2              MR. VICENTE:  No, Your Honor.

3              THE COURT:  All right.  Let me ask defendant, did

4    you hear all the proceedings without any trouble once we were

5    able to reconnect?

6              THE INTERPRETER:  I heard everything.

7              THE COURT:  All right.  And the equipment worked

8    just fine then; is that right?

9              THE INTERPRETER:  Yes.

10             THE COURT:  All right.  Lastly,

11   Mr. Villegas-Rodriguez, you know, you've committed very

12   terrible crimes, and I hope that you will use your time in

13   prison to get some more education, get your drug problem

14   under control, and get some vocational training, and so when

15   you're finally released and deported to Mexico you can turn

16   yourself around and be a useful and productive citizen.

17             So with that, good luck to you, sir.

18             And thanks to the interpreter for your assistance.

19             THE INTERPRETER:  Thank you, Your Honor.

20             THE COURT:  Court's adjourned.

21             MR. DELWORTH:  Thank you.

22             (Court in recess at 1:57 p.m.)

23

24

25

C E R T I F I C A T E

1

2          I, Susan R. Moran, Registered Merit Reporter, in

3    and for the United States District Court for the Eastern

4    District of Missouri, do hereby certify that I was present

5    at and reported in machine shorthand the proceedings in the

6    above-mentioned court; and that the foregoing transcript is

7    a true, correct, and complete transcript of my stenographic

8    notes.

9          I further certify that I am not attorney for, nor

10   employed by, nor related to any of the parties or attorneys

11   in this action, nor financially interested in the action.

12         I further certify that this transcript contains

13   pages 1 - 18 and that this reporter takes no responsibility

14   for missing or damaged pages of this transcript when same

15   transcript is copied by any party other than this reporter.

16         IN WITNESS WHEREOF, I have hereunto set my hand

17   at St. Louis, Missouri, this 12th day of January, 2015.

18

19                    _____

                      /s/ Susan R. Moran
20                    Registered Merit Reporter

21

22

23

24

25